# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| JANE DOE, et al., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> PAMELA BONDI, in her official capacity as Attorney General of the United States; and WILLIAM LOTHROP, in his official capacity as Acting Director of the Federal Bureau of Prisons, <br><br> Defendants-Appellants. | No. 25-5099 |

## UNDERLYING DECISION FROM WHICH APPEAL ARISES

Defendants-Appellants seek review of the February 18, 2025 Order (Dkt. No. 44), 2025 WL 596651; the February 24, 2025 Order (Dkt. No. 55), 2025 WL 596653; and the March 19, 2025 Order (Dkt. No. 68), in this case from the United States District Court for the District of Columbia. *See Doe v. Bondi*, No. 1:25-cv-286 (D.D.C.) (Lamberth, J.). The Orders are attached to this filing.

Respectfully submitted,

GERARD SINZDAK
 /s/ *McKaye L. Neumeister*
McKAYE L. NEUMEISTER
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Ave., N.W.
  Room 7231
  Washington, D.C. 20530
  (202) 514-8100

APRIL 2025

# CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, I caused to be filed with the Court and served on opposing counsel through the CM/ECF system the foregoing UNDERLYING DECISION FROM WHICH APPEAL ARISES.

                                           */s/ McKaye L. Neumeister*
                                           McKaye L. Neumeister
                                           Counsel for Defendants-Appellants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE, *et al.*,

    *Plaintiffs*,

v.

JAMES R. MCHENRY, III, in his official capacity as Acting Attorney General of the United States, *et al.*,

    *Defendants*.

Case No. 1:25-cv-286-RCL

## ORDER

On February 4, 2025, after a hearing, this Court entered a Temporary Restraining Order [ECF No. 23] enjoining the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 on Eighth Amendment grounds. In their papers submitted to the Court and at the hearing, the plaintiffs adduced facts suggesting that they would be at a substantially elevated risk of physical and sexual violence if they were transferred to a male penitentiary pursuant to the Executive Order; that the transfer itself would be likely to exacerbate the plaintiffs' diagnosed mental health conditions; and that the withholding of their prescribed hormone therapy medication would be likely to cause severe harm. Importantly, the defendants did not substantially dispute those facts. Instead, the defendants pointed to speculative action that the Bureau of Prisons might take to mitigate those harms and thus assuage the Court's Eighth Amendment concerns. Those hypothetical measures were insufficient to defeat the plaintiffs' largely uncontroverted evidence of harm.

The Temporary Restraining Order noted that the revelation of additional facts then unknown to the Court could affect the plaintiffs' likelihood of success on the merits. However,

since the issuance of the Temporary Restraining Order, the Court has received no further information about what ameliorative steps, if any, the government intends to or would take if the plaintiffs were to be transferred and deprived of their prescribed medications per the terms of the Executive Order.

Therefore, in consideration of the plaintiffs' Motion [ECF No. 13] for a Preliminary Injunction, the Opposition [ECF No. 11] thereto, and the entire record herein, which is essentially unchanged since the issuance of the Temporary Restraining Order [ECF No. 23], and for the reasons contained in the Temporary Restraining Order, it is hereby

**ORDERED** that the plaintiffs' Motion for a Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against plaintiffs Jane, Mary and Sara Doe, pending further Order of this Court; and it is further

**ORDERED** that, pending further Order of this Court, defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025.

Date: February 18, 2025
2:10 p.m.

Royce C. Lamberth
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JANE DOE**, *et al.*,

    *Plaintiffs*,

v.

**PAMELA BONDI**, in her official capacity as Attorney General of the United States, *et al.*,[1]

    *Defendants*.

Case No. 1:25-cv-286-RCL

## ORDER

On February 18, 2025, this Court entered a Preliminary Injunction [ECF No. 44] enjoining the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 on Eighth Amendment grounds against plaintiffs Jane, Mary, and Sara Doe. On February 21, the plaintiffs filed an Amended Complaint adding nine new plaintiffs, all of whom are transgender women incarcerated in women's BOP facilities seeking the same relief as the original three plaintiffs. *See* Amended Complaint, ECF No. 47. That same day, the plaintiffs filed a Motion for a Temporary Restraining Order and Expanded Preliminary Injunction [ECF No. 50] ("TRO/PI Mot.") to prevent the Government from implementing Executive Order 14168 as to all plaintiffs. The plaintiffs emphasized the urgency in resolving this Motion because "the additional plaintiffs . . . were rounded up by BOP officials and informed that they would be immediately transferred to men's prisons and would have their healthcare terminated pursuant to the Executive Order." TRO/PI Mot. 2. On February 23, the Government filed an Opposition [ECF No. 50] ("Opp'n"), and the plaintiffs filed a Reply [ECF No. 54] on February 24.

---

[1] Under Fed. R. Civ. Pr. 25(d), Attorney General Pamela Bondi is "automatically substituted as a party" as the successor for Acting Attorney General James R. McHenry III.

1

The Court has reviewed the parties' filings and determines that the same reasoning from the Court's original TRO Order [ECF No. 23] still applies, with nothing in the record to compel a different outcome. At the outset, the Court sees no reason to change its legal conclusions from the original TRO Order regarding availability of judicial review or unavailability of administrative exhaustion. The Government's proffered reasons for doing so are unavailing. The Court also observes that the Government offers no new developments regarding the Medication Provision, Sec. 4(c), of the Executive Order, so the same outcome will hold.

The only new development on the record is that the Government has identified low-security men's facilities in which to house the plaintiffs, which, according to the Government, completely alleviates the plaintiffs' alleged Eighth Amendment harms regarding the Transfer Provision, Sec. 4(a), of the Executive Order. *See* Opp'n 20; *see generally* Decl. of Rick Stover, Senior Deputy Assistant Director, Designation and Sentence Computation Center, ECF No. 53-2 ("Stover Decl."). The plaintiffs urge the Court to strike the Stover Declaration or at least afford it "little weight." Reply 6.

But even considering the Stover Declaration, the Court finds that the plaintiffs are still likely to succeed on their Eighth Amendment claim regarding the Transfer Provision, as this Court concluded in granting the original TRO motion. The Stover Declaration indicates that housing reassessments were conducted to identify men's facilities in which to house each plaintiff—but the Government's filings also make clear that the *only* change in circumstances from when the initial housing determination was made to now is Executive Order 14168. Stover Decl. ¶¶ 10, 17; Opp'n 3. When the initial housing determination was made for each of the named plaintiffs, the BOP determined that considering all statutorily and constitutionally required factors, a women's facility was the appropriate facility for each named plaintiff. This was the conclusion even in a

2

landscape where ninety-nine percent of transgender women in BOP custody are housed in men's facilities. *See* Opp'n 3. Summarily removing the possibility of housing the plaintiffs in a women's facility, when that was determined to be the appropriate facility under the existing constitutional and statutory regime, demonstrates a likelihood of success on the merits of the plaintiffs' Eighth Amendment claim.[2] The Court still takes no position on the plaintiffs' equal protection, APA, or separation of powers claims. *See* TRO Order 1.

Therefore, in consideration of the plaintiffs' Motion [ECF No. 50] for a Temporary Restraining Order and Preliminary Injunction, the Opposition [ECF No. 52] thereto, the Reply [ECF No. 54], and the entire record herein, and for the reasons contained in the original Temporary Restraining Order [ECF No. 23], it is hereby

**ORDERED** that the plaintiffs' Motion for a Temporary Restraining Order and Expanded Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the Defendants are hereby enjoined from implementing Sections 4(a) and 4(c) of Executive Order 14168 against plaintiffs Jane, Mary, Sara, Emily, Zoe, Tori, Olivia, Susan, Lois, Sophia, Sally, and Wendy Doe, pending further Order of this Court; and it is further

---

[2] The Court is also unconvinced by the Government's proffered statistics attempting to show that a low-security men's facility would be *safer* for the plaintiffs than their current housing assignment. *See* Opp'n 3, 10. The Government's statistics do not disaggregate assaults against transgender inmates from overall rates of assault. And in any event, the proffered statistics are still consistent with the "numerous government reports and regulations recognizing that transgender persons are at a significantly elevated risk of physical and sexual violence relative to other inmates when housed in a facility corresponding to their biological sex." TRO Order 5. And that is to say nothing of the other harms identified by plaintiffs, which the Government fails to address: "that placement in a male penitentiary *by itself* will exacerbate the symptoms of their gender dysphoria, *even if* they are not subject to physical or sexual violence in their new facility—whether because they will be subject to searches by male correctional officers, made to shower in the company of men, referred to as men, forced to dress as men, or simply because the mere homogenous presence of men will cause uncomfortable dissonance." *Id.*

**ORDERED** that, pending further Order of this Court, Defendants shall maintain and continue the plaintiffs' housing status and medical care as they existed immediately prior to January 20, 2025.

Date: February 24, 2025
1:51 p.m.

Royce C. Lamberth
United States District Judge

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JANE DOE**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**PAMELA BONDI**, in her official capacity as Attorney General of the United States, *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-286-RCL |

## ORDER

On February 18, 2025, this Court entered a preliminary injunction enjoining the enforcement of Sections 4(a) and 4(c) of Executive Order 14168 against a group of transgender women on Eighth Amendment grounds. *See* Preliminary Injunction, ECF No. 44; *see also Doe v. McHenry*, No. 25-cv-286-RCL, 2025 WL 388218 (D.D.C. Feb. 4, 2025) (discussing the Eighth Amendment implications of the Executive Order and granting a temporary restraining order). On February 21, the plaintiffs filed a Motion to extend that preliminary injunction to a group of additional plaintiffs, *see* ECF No. 50, which the Court granted on February 24. *See Doe v. Bondi*, No. 25-cv-286-RCL, 2025 WL 596653 (D.D.C. Feb. 24, 2025).

On March 14, 2025, the plaintiffs moved with the consent of the defendants to file a Second Amended Complaint in this dispute. *See* Consent Mot. for Leave to File, ECF No. 58. The Second Amended Complaint is substantially identical to the First Amended Complaint, except that it adds two additional plaintiffs, Rachel Doe and Ellen Doe. The new plaintiffs are in most respects similarly situated to the other plaintiffs in this suit, with one exception: while the other plaintiffs were pending transfer to a male penitentiary when the Court ruled on their motions for a

1

preliminary injunction, these new plaintiffs have already been transferred to male facilities. *See* Second Amended Compl. ¶¶ 45, 50, ECF No. 58-2.

The plaintiffs have now moved for a preliminary injunction to enjoin enforcement of the Executive Order against them and to have them returned to female prison facilities. Mot. for PI, ECF No. 66.[1] The Motion repeats the plaintiffs' previous arguments against the Executive Order, but adds new factual grounds for their claims which arise from the new plaintiffs' different circumstances. First, the plaintiffs allege that BOP has already halted new plaintiff Rachel Doe's hormone therapy, unlike the earlier plaintiffs who were only threatened with discontinuation of their therapy. Mot. for PI at 2. Second, the new plaintiffs allege that they have actually been subjected to sexual harassment at their new facilities. *Id.*; *see also* Decl. of Ellen Doe ¶ 8, Mot. for TRO[2] Attach. 1, ECF No. 61-3; Decl. of Rachel Doe ¶ 11–12, Mot. for TRO Attach. 2, ECF No. 61-4. Third, the new plaintiffs allege that since their transfer to a male facility they have been unable to access bras and women's underwear. Mot. for PI at 2. Fourth and finally, the new plaintiffs allege that they have been subject to strip searches by male prison officials without female officials present. *Id.* at 2. In a sealed Response, the defendants contest each of these new claims on either factual or legal grounds. ECF No. 64.

The Court need not dwell on these arguments at this time because, even supposing that the defendant is correct that each of the plaintiffs' new arguments is either factually or legally defunct, the new plaintiffs are at least as strongly situated, in terms of the merits of their Eighth Amendment claims, as the existing plaintiffs. Moreover, the fact that they have already been transferred and,

---

[1] The plaintiffs originally styled this as a motion for a temporary restraining order. *See* Mot. for TRO, ECF No. 61. Then, per the Government's suggestion and after discussion with the Court, the plaintiffs filed a motion to convert the original TRO motion into a Motion for a Preliminary Injunction. *See* Mot. to Convert, ECF No. 66. The Court therefore addresses this motion in the posture of a preliminary injunction request, rather than a TRO.

[2] The declarations are attached to Plaintiffs original motion for a TRO, rather than the converted PI Motion.

allegedly, have been abused at their new facilities can only strengthen their claims of irreparable harm. The final two prongs of the preliminary injunction analysis—the balance of the equities and the public interest in the injunction—are at least unchanged from the Court's previous temporary restraining order and preliminary injunction analyses, or at most have tilted further in the plaintiffs' favor. Therefore, the Court is satisfied that preliminary injunctive relief is appropriate for the two new plaintiffs, for the same reasons that it was appropriate for the existing ones.

The Court determines that it is appropriate in this case to enter a preliminary injunction, rather than a temporary restraining order. The Government has communicated its view that, should the Court decide that some form of preliminary injunctive relief is necessary, the Court should enter a preliminary injunction rather than TRO. A preliminary injunction is the better form of relief here because the factual circumstances underlying this dispute are unlikely to significantly change before a TRO would expire, and because judicial economy counsels in favor of situating the new plaintiffs similarly to their existing counterparts, rather than revisiting their specific circumstances alone in two weeks' time.

In accordance with the Prison Litigation Reform Act, the Court finds that this preliminary injunction is narrowly drawn, extends no further than necessary to correct the violation of plaintiffs' federal rights, and is the least intrusive means necessary to correct the violation of the plaintiffs' federal rights. 18 U.S.C. § 3626(a)(1). Plaintiffs have shown a substantial likelihood of success on their claims that implementation of sections 4(a) and 4(c) of the Executive Order is or will be unlawful as to them and has caused or will cause them immediate and irreparable harm. A preliminary injunction reversing and preventing the implementation of those sections as to these plaintiffs is necessary to correct the violation of their rights and is the least intrusive means to do so. Furthermore, because this preliminary injunction prevents the implementation of only those

sections of the Executive Order for which the plaintiffs have demonstrated a likelihood of success on the merits and immediate, irreparable harm, this order extends no further than necessary to correct the violation.

Finally, this Court has considered any adverse impact on public safety or on the operation of the criminal justice system caused by this relief, given substantial weight to such impacts, and has concluded and finds that no adverse impacts on public safety or the operation of the criminal justice system will result from reinstating and maintaining the previous status of the plaintiffs' medical care and housing while the litigation proceeds.

Therefore, upon consideration of the plaintiffs' Consent Motion for Leave to File, their Motion for a Preliminary Injunction, the opposition thereto, and the entire record herein, and for the reasons contained in this Order and in the Court's prior Orders granting TROs and preliminary injunctions in this dispute, it is hereby

**ORDERED** that the Motion for Leave to File is **GRANTED**; and it is further

**ORDERED** that the Plaintiffs' Motion for a Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the defendants are enjoined and restrained from implementing sections 4(a) and 4(c) of Executive Order 14168 with regard to plaintiffs Rachel Doe and Ellen Doe, pending further Order of this Court; and it is further

**ORDERED** that the Defendants shall immediately transfer plaintiffs Rachel Doe and Ellen Doe back to women's penitentiaries and reinstate or continue their gender dysphoria treatment, pending further Order of this Court.

Date: March 19, 2025
12:30 p.m.

Royce C. Lamberth
United States District Judge

4