**ORAL ARGUMENT SCHEDULED ON SEPTEMBER 5, 2025**
**NOS. 25-5099, 25-5101, 25-5108 (consol.)**

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA**
**CIRCUIT**

---

JANE DOE, et al., JANE JONES, et al., MARIA MOE,

*Plaintiffs-Appellees*,

v.

PAMELA BONDI, in her official capacity as Attorney General
of the United States, et al.;

DONALD J. TRUMP, in his official capacity as President
of the United States, et al.,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia

---

**BRIEF OF LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF**
**PLAINTIFF-APPELLEES**

---

Margo Schlanger
625 So. State Street
LR 910
Ann Arbor, MI 48109
(202) 277-2506
margo.schlanger@gmail.com

Carolyn F. Corwin
Alex Cohen
Katie Cohen
Catherine Wettach
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
ccorwin@cov.com

*Counsel for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), *amici curiae* law professors certify as follows:

**A.    Parties and *Amici*.**  The law professors listed in this brief are participating as *amici curiae* before this court.  All parties, intervenors, and *amici* appearing to date in this Court are contained or referenced in the Consolidated Brief for Appellees, Doc. No. 2123121, filed on June 30, 2025.

**B.    Rulings Under Review.**  References to the rulings under review appear in the Consolidated Brief for Appellees.

**C.    Related Cases.**  References to any related cases pending before this Court appear in the Consolidated Brief for Appellees.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............... i

TABLE OF AUTHORITIES ..................................................................... iii

GLOSSARY ........................................................................................ v

RULE 29 CERTIFICATIONS ................................................................. vi

IDENTITY AND INTEREST OF *AMICI CURIAE* ................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................ 5

ARGUMENT ....................................................................................... 8

    I.    The District Court Properly Exercised Jurisdiction Over Plaintiffs' Claims. ................................................................ 8

    II.   The PLRA's Exhaustion Requirement Does Not Apply Because No Administrative Remedy Was Available. ....................... 11

CONCLUSION ................................................................................... 18

CERTIFICATE OF COMPLIANCE .................................................... 19

CERTIFICATE OF SERVICE ............................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Jacquez,*
  860 F. App'x 459 (9th Cir. 2021) ...........................................................9

*Crowe v. Fed. Bureau of Prisons*,
  No. 24-cv-3582, 2025 WL 1635392 (D.D.C. June 9, 2025) ..................9

*Fletcher v. Menard Corr. Ctr.,*
  623 F.3d 1171 (7th Cir. 2010)...............................................................15

*Guerrero-Lasprilla v. Barr,*
  589 U.S. 221 (2020) .............................................................................10

*Jones v. Bock*,
  549 U.S. 199 (2007) .............................................................................11

*Kaemmerling v. Lappin,*
  553 F.3d 669 (D.C. Cir. 2008) ....................................................... 12, 13

*McBryde v. Comm. to Review Cir. Council Conduct,*
  264 F.3d 52 (D.C. Cir. 2001) .................................................................9

*McNary v. Haitian Refugee Ctr., Inc.*,
  498 U.S. 479 (1991) .............................................................................10

*Perttu v. Richards*,
  145 S. Ct. 1793 (2025)..........................................................................11

*Porter v. Nussle*,
  534 U.S. 516 (2002) .............................................................................13

*Reno v. Cath. Soc. Servs., Inc.*,
  509 U.S. 43 (1993) ...............................................................................10

*Rodriguez v. Copenhaver*,
  823 F.3d 1238 (9th Cir. 2016)...............................................................10

*Ross v. Blake*,
    578 U.S. 632 (2016) ...........................................................11, 12, 13, 16

*Valentine v. Collier*,
    140 S. Ct. 1598 (2020)..........................................................................16

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020)................................................................15

*Webster v. Doe*,
    486 U.S. 592 (1988) .............................................................................11

## Statutes

18 U.S.C. § 3621(b) ......................................................................... 7, 8, 9, 10

18 U.S.C. § 3625..................................................................................10

42 U.S.C. § 1997e(a)..........................................................................11

First Step Act of 2018, Pub. L. No. 115-391, Title VI, sec. 601, 132 Stat. 5194
    (2018)......................................................................................................8

## Regulations

28 C.F.R. § 115.52(b)(3) .....................................................................16

28 C.F.R. § 542.14(a)..........................................................................16

28 C.F.R. § 542.15...............................................................................16

28 C.F.R. § 542.18 ...............................................................................16

## Other Authorities

Executive Order 14168, *Defending Women from Gender Ideology Extremism
    and Restoring Biological Truth to the Federal Government*,
    90 Fed. Reg. 8615 (Jan. 30, 2025)......................... 5, 6, 7, 9, 10, 13, 14

Margo Schlanger & Betsy Ginsberg, *Pandemic Rules: COVID-19 and the Prison
    Litigation Reform Act's Exhaustion Requirement*, 72 Case Western
    Reserve L. Rev. 533 (2022) ...............................................................15

## GLOSSARY

| | |
|---|---|
| BOP | Federal Bureau of Prisons |
| EO | Executive Order |
| J.A. | Joint Appendix |
| PLRA | Prison Litigation Reform Act |

# RULE 29 CERTIFICATIONS

All parties have consented to the timely filing of this *amicus* brief.

Pursuant to D.C. Cir. R. 29(d), a separate *amicus* brief is necessary because *amici* address solely the procedural issues of jurisdiction and administrative exhaustion. *Amici* are unaware of other entities or individuals intending to participate as *amici* in this matter who will focus on these procedural issues or who can offer the unique and technical perspective of scholars who study prisoner litigation and related statutes.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* certify that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici* or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici* are professors of law who study, teach, and write about prison and jail litigation, including its procedural aspects. They submit this brief to share their views, based on that experience, on the proper interpretation of prison litigation statutes considering the important rights at stake in these appeals and the practical realities of prisoner litigation.

A complete list of *amici* follows below[1]:

1. **Margo Schlanger.** Professor Schlanger is the Wade H. and Dores M. McCree Collegiate Professor of Law and Director of Civil Rights Litigation Clearinghouse, University of Michigan Law School. She is the lead author of *Incarceration and the Law: Cases and Materials* (West Academic) and many articles about prisoners' rights litigation and the Prison Litigation Reform Act.

2. **Andrea Armstrong,** Dr. Norman C. Francis Distinguished Professor of Law, Loyola University New Orleans, College of Law

3. **Paulina D. Arnold,** Assistant Professor of Law, University of Michigan Law School

4. **Shirin Bakhshay,** Assistant Professor of Law, UCLA School of Law

5. **W. David Ball,** Professor, Santa Clara University School of Law

---

[1] Institutional affiliations are included for identification purposes only; signatories to this brief provide their own views and do not represent the views of any institution.

6. **Erin R. Collins,** Professor of Law, University of Richmond School of Law

7. **D Dangaran,** Assistant Professor of Law (designate), University of Hawaiʻi at Mānoa

8. **Sharon Dolovich,** Professor of Law; Faculty Director, UCLA Prison Law & Policy Program; Director, UCLA Law Behind Bars Data Project; Faculty Co-Director, Criminal Justice Program, UCLA School of Law

9. **Avlana K. Eisenberg,** Professor, Boston College Law School

10. **Malcolm M. Feeley,** Claire Sanders Clements Dean's Professor of Law, Emeritus, UC Berkeley School of Law

11. **Eric S. Fish,** Professor of Law, UC Davis School of Law

12. **Betsy Ginsberg,** Associate Dean for Clinical Education; Clinical Professor of Law; Director, Civil Rights Clinic, Benjamin N. Cardozo School of Law.

13. **Nicole B. Godfrey,** Assistant Professor of Law, University of Denver Sturm College of Law

14. **Cynthia Godsoe,** Professor of Law and Associate Dean for Research and Scholarship, Brooklyn Law School

15. **Danielle C. Jefferis,** Schmid Professor for Excellence in Research; Assistant Professor of Law, University of Nebraska College of Law

16. **Issa Kohler-Hausmann,** Professor of Law, Yale Law School; Associate Professor of Sociology, Yale University

17. **Grace Y. Li,** Assistant Professor, The Ohio State University Moritz College of Law

18. **Aaron Littman,** Assistant Professor of Law; Faculty Director, Prisoners' Rights Clinic; Deputy Director, Behind Bars Data Project, UCLA School of Law

19. **Zina Makar,** Assistant Professor of Law, University of Baltimore School of Law

20. **Michael B. Mushlin,** Professor of Law Emeritus, Pace University, Elisabeth Haub School of Law

21. **Reena Parikh,** Assistant Clinical Professor; Director of Civil Rights Clinic, Boston College Law School

22. **Judith Resnik,** Arthur Liman Professor of Law, Yale Law School

23. **Ira P. Robbins,** Distinguished Professor of Law and Barnard T. Welsh Scholar, American University Washington College of Law

24. **Laura Rovner,** Professor of Law; Director, Civil Rights Clinic, University of Denver Sturm College of Law

25. **David Rudovksy,** Senior Fellow, University of Pennsylvania Law School

26. **Shanda Sibley,** Assistant Clinical Professor of Law, Temple University Beasley School of Law

27. **Jonathan Simon,** Lance Robbins Professor of Criminal Justice Law, UC

Berkeley School of Law

28. **Ji Seon Song,** Assistant Professor of Law, UC Irvine School of Law

29. **Anna VanCleave,** Director of the Criminal Defense Clinic and Associate Professor of Law, University of Connecticut School of Law

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Executive Order at issue in these appeals targets a small and uniquely vulnerable minority of transgender women—those currently housed in federal women's prisons—by commanding the Federal Bureau of Prisons (BOP) to transfer them immediately to men's facilities.  *Amici* file in support of Plaintiffs-Appellees (hereinafter "Plaintiffs"), to address two procedural arguments made by Defendants-Appellants ("the government").  First, Congress has not eliminated federal court jurisdiction to decide Plaintiffs' challenge to the transfer provisions of the Executive Order.  Second, the government overreads the Prison Litigation Reform Act (PLRA); Plaintiffs' lawsuit is not improper or premature under that statute's exhaustion requirement because no administrative remedy was available to them.  The Court should affirm the district court's rulings on both jurisdiction and exhaustion.  This brief does not address other issues; *amici* support affirmance but focus our argument on the procedural issues where our expertise can be the most helpful.

On Inauguration Day, January 20, 2025, President Trump issued Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025) (EO 14168 or "the EO").  Declaring it "the policy of the United States to recognize two sexes, male and female," the EO asserts that transgender individuals are making a

"false claim," contradicting "fundamental and incontrovertible reality." EO 14168, 90 Fed. Reg. at 8615. EO 14168 requires, among other things, that the BOP "ensure that males are not detained in women's prisons." *Id.* at 8616.

According to the government, as of February 20, 2025, BOP incarcerated 1,488 transgender women (the government labels them "male trans-identifying inmates"). Just **22** were housed in women's prisons. J.A. 307. Nearly all this tiny minority are Plaintiffs here. Consolidated Br. for Appellees at 1, *Doe v. Bondi*, No. 25-5099 (D.C. Cir. June 30, 2025), Doc. No. 2123121.

These prisoners are housed in women's facilities under the BOP's pre-EO policy, which required that housing decisions for transgender prisoners take into consideration the prisoner's health and safety, including (at various periods) mitigating risk to the prisoner, vulnerability to sexual victimization, likely interactions with other prisoners, and current gender expression. *See* J.A. 103-04, 124-25; Consolidated Br. for Appellees at 20. BOP's 2018 Transgender Offender Manual noted that assignments to a facility of a transgender prisoner's identified gender would be limited to "rare cases after consideration of all of" these and other factors "and where there has been significant progress towards transition as demonstrated by medical and mental health history, as well as positive institution adjustments." J.A. 104.

Thus, it is clear that the BOP considered these 22 transgender women to be

particularly vulnerable if housed in men's prisons.  Consolidated Br. for Appellees at 1.  And Plaintiffs' placement in this status was amply justified, including by their prior experiences in men's prisons.  *See infra* at 14-15.  Even so, the EO targeted them, threatening them with grievous harm under the guise of "defend[ing] women's rights."  EO 14168, 90 Fed. Reg. at 8615.

Contrary to the government's arguments, no obstacles prevent review of Plaintiffs' claims.  The district court's jurisdiction is not barred by 18 U.S.C. § 3621(b) because transfers required by EO 14168 do not constitute a "designation of a place of imprisonment under [that] subsection."  In addition, Plaintiffs were not required to exhaust administrative remedies because no such remedies were available: as the district court found, the terms of the EO gave the BOP no discretion to avoid the President's command to transfer the transgender women to men's prisons, rendering any grievance an unavailable "dead end."  And in any event, there was insufficient time for Plaintiffs to pursue relief through the administrative process, leaving them with the untenable certainty that if they did not bring these lawsuits, they would be speedily transferred to men's prisons and immediately placed in harm's way.  In these circumstances, both the PLRA's text and Supreme Court caselaw make clear that the BOP grievance system did not offer any "available" administrative remedy—and therefore Plaintiffs were not required to pursue grievances as a precondition to their suits.

7

## ARGUMENT

## I.    The District Court Properly Exercised Jurisdiction Over Plaintiffs' Claims.

The district court's exercise of jurisdiction over Plaintiffs' claims was not barred by 18 U.S.C. § 3621(b).  In that subsection, Congress has instructed that the BOP "shall designate the place of the prisoner's imprisonment."    18 U.S.C. § 3621(b).  In 2018, the First Step Act added mandatory language to the subsection's prior permissive phrasing governing the considerations that should inform individual housing designations, stating that, "The Bureau *shall*, subject to consideration of [specified] factors . . . , place the prisoner in a facility as close as practicable to the prisoner's primary residence" (emphasis added), while also declaring that there would be no judicial review of the resulting decisions: "a designation of a place of imprisonment under this subsection is not reviewable by any court."  *See* First Step Act of 2018, Pub. L. No. 115-391, § 601, 132 Stat. 5194, 5237 (2018).

This prohibition on a cause of action for prison designations has no application here, because Plaintiffs' challenge is not to "a designation of a place of imprisonment under this subsection."  Section 4(a) of EO 14168 commands the Attorney General to "ensure that males are not detained in women's prisons."  EO 14168, 90 Fed. Reg. at 8616.  On its face, this unbending command does not occur "under . . . subsection" 3621(b), because it removes all BOP discretion without reference to any factor set out in the statute.  Moreover, the EO's new command does not designate a "place of

imprisonment" for Plaintiffs but a type of prison—one that houses men.  And the EO does not prescribe an individual housing decision but rather sets a rule that in turn informs housing designations for a group (transgender women) rather than for the individual Plaintiffs in this case.  For all these reasons, neither the EO nor the rule it announces is "a designation of a place of imprisonment" or "under [§ 3621(b)]."  Thus, the suits challenging the EO transfer requirement are unaffected by the First Step Act's limit on access to courts to challenge prison designations.  *See Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *14 (D.D.C. June 9, 2025) ("Though [§ 3621(b)] strips the court of jurisdiction to consider [a plaintiff's] *individual* challenge, it does not preclude review of all challenges that might implicate individual designation decisions." (quoting *Ahmad v. Jacquez*, 860 F. App'x 459, 462 (9th Cir. 2021)).[2]  The same argument forecloses the purported impact of 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."); Plaintiffs' challenge is not to any decision "under this subchapter."

These are plain text readings; no special presumptions are needed to reach

---

[2] Three out-of-circuit cases the government cites (*see* Govt. Br. at 28-29) are distinguishable on this basis.  All three involved challenges to a BOP individual housing designation.  And the government's invocation of *McBryde v. Comm. to Review Cir. Council Conduct*, 264 F.3d 52 (D.C. Cir. 2001), is misguided.  *McBryde* involved a statutory scheme entirely different from that of § 3621(b).

them.  But if there were any doubt, the Supreme Court has emphasized "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020).  This "well-settled" and "strong" presumption can be overcome only by "'clear and convincing evidence' of congressional intent to preclude judicial review." *Id.* (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 498 (1991), and *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)).  No such showing can be made that § 3621(b)'s bar of judicial review for an individualized housing designation was intended, as well, to apply to generalized policy that includes a command that informs housing designations, such as EO 14168.

Indeed, even if Plaintiffs' challenge *were* to a prison designation, it would not be barred.  As the Ninth Circuit has held, the First Step Act did not eliminate federal courts' "jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority when it acted pursuant to 18 U.S.C. § 3621." *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016).  "[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear . . . to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988).

## II.   The PLRA's Exhaustion Requirement Does Not Apply Because No Administrative Remedy Was Available.

The government's position on exhaustion is likewise incorrect.  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The government argues that Plaintiffs should have preceded any effort to litigate by filing grievances objecting to their impending transfers to men's prisons, and completing the ensuing grievance process.  But barring this lawsuit would extend the PLRA well past its terms, because no administrative remedy was, in fact, available.

The Supreme Court has repeatedly interpreted the PLRA to give full—but not more than full—effect to the statutory text.  *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, 212 (2007) (nothing in the PLRA suggests that exhaustion must be pleaded by the plaintiffs rather than following "the usual practice under the Federal Rules [of Civil Procedure]"); *Ross v. Blake*, 578 U.S. 632 (2016) (discussed below; exhaustion is not required unless administrative remedies are "available"); *Perttu v. Richards*, 145 S. Ct. 1793 (2025) (PLRA's exhaustion provision does not extinguish jury rights, where exhaustion question is factually intertwined with the merits).

Applying this general approach, the Supreme Court provided clear guidance on the statutory term "available" in *Ross v. Blake*, directing attention to "the real-

11

world workings of prison grievance systems," 578 U.S. at 643, and giving three

examples of *un*availability:

> First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id*. at 643-44.  The first is the example relevant here.

In these cases, the grievance system was a "simple dead end" for Plaintiffs

because the BOP had no discretion to countermand the President with respect to their

transfer, which he had authoritatively decreed.  As Judge Sentelle explained for this

Court in *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008):

> [A] prisoner must exhaust only "such administrative remedies as are available," . . . that is, those prison grievance procedures that provide "the possibility of some relief for the action complained of," *Booth*, 532 U.S. at 738. The statutory requirement of an available remedy presupposes authority to take some action in response to a complaint. *Booth*, 532 U.S. at 736. Thus, if "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," then a prisoner is left with nothing to exhaust and the PLRA does not prevent the prisoner from bringing his or her claim directly to the district court.  *Id.*

The district court here correctly held that administrative remedies were unavailable

to Plaintiffs because the text of EO 14168 "plainly requires the BOP to perform the allegedly unlawful facility transfer." J.A. 162. That is, with respect to the challenged transfers, this case is like *Kaemmerling*. There, the BOP lacked discretion not to collect a prisoner's DNA because a federal statute made collection mandatory. *Id.* at 675-76. Here, the BOP lacks discretion to decide not to transfer the Plaintiffs to a men's prison.

To be clear, under the PLRA, "exhaustion" remains "a prerequisite to suit" even if "the prisoner seeks relief not available in grievance proceedings." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). So long as "some relief for the action complained of" is available in the "grievance procedure[ ]," the prisoner must exhaust it. *Ross v. Blake*, 578 U.S. at 642 (citation omitted). BOP concedes that it "lacks discretion to continue housing plaintiffs in female facilities under EO 14168," but now argues in vague terms that some relief was available via the grievance process—"any number of actions that BOP can take to protect [Plaintiffs'] safety in a male facility, including changes to housing and programming assignments, and protective custody." Govt. Br. at 32. But even if, as the BOP now argues, some BOP actions not foreclosed by the EO might mitigate the dangers to Plaintiffs, the BOP's grievance process was never realistically going to provide those accommodations in time to prevent Plaintiffs' impending victimization. The record makes clear that events unfolded at a very high speed. Consolidated Br. for Appellees at 12. BOP

officials rounded up transgender women prisoners after EO 14168's release and informed them that paperwork was being processed to transfer them immediately to men's prisons. J.A. 86, 230, 382, 386. One Plaintiff was handcuffed, provided men's boxer shorts, and transferred to a medium security men's prison on the same evening she was notified of BOP's plan to transfer her. J.A. 287. Others were told transfer would occur within just a few days. *See* J.A. 916, 930, 935, 939, 943, 952.

The stakes were (and remain) extremely high. For example, Plaintiff Mary Doe had been raped multiple times when she was previously housed in BOP men's facilities. J.A. 192. Plaintiff Donna Jones had been similarly targeted and raped while in a male facility, and Plaintiff Amy Jones had been "violently and sexually attacked by three male inmates" in a low-security male facility. J.A. 370. Plaintiff Carla Jones was sexually assaulted in three men's prisons and suffered many physical assaults. J.A. 382. As the Plaintiffs summarize, "nearly all of the Plaintiffs who were previously housed in men's facilities were sexually assaulted when they were there." Consolidated Br. for Appellees at 8-9; *see also id.* at 21-22. It was for precisely these reasons that Plaintiffs were in the rare situation of being housed in women's prisons in alignment with their gender identity. Consolidated Br. for Appellees at 8-9, 21-22.

Even if they had filed emergency grievances and the BOP had been willing to expedite review of the grievances, the Plaintiffs would still have been transferred to

men's prisons, placing them in harm's way well prior to BOP's issuance of a final agency response. The Seventh Circuit's opinion in *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171 (7th Cir. 2010), is instructive. There, Judge Posner reasoned that administrative remedies are not "available" if "a prisoner has been placed in imminent danger of serious physical injury" but cannot obtain any "possible relief in time to prevent" that danger "from becoming an actual harm." *Id.* at 1173. A process that "takes two weeks to exhaust," after all, provides "no possibility of some relief" when the prisoner "is in danger of being killed tomorrow." *Id.* at 1174 (internal quotation marks omitted); *see also* Margo Schlanger & Betsy Ginsberg, *Pandemic Rules: COVID-19 and the Prison Litigation Reform Act's Exhaustion Requirement*, 72 Case Western Reserve L. Rev. 533, 547-54 (2022) (arguing that under the PLRA, administrative remedies are not "available" for an emergency claim unless they can provide timely resolution).

True, the Fifth Circuit disagreed in *Valentine v. Collier*, 956 F.3d 797, 805 (5th Cir. 2020), stating that an administrative remedy counts as "available" no matter how long it is likely to take, if it *could* be faster. But as Justice Sotomayor cautioned in response, this approach is simply incorrect, because, as the Court made clear in *Ross v. Blake,* the "PLRA's textual exception" directs attention not just to grievance practices on paper, but to "the facts on the ground." *Valentine v. Collier*, 140 S. Ct. 1598, 1600–01 (2020) (Sotomayor, J., respecting the denial of application to vacate

stay) (citing *Ross*, 578 U.S. at 643).

Moving then to those facts on the ground, the BOP Administrative Remedy process has four levels, each with a timeframe for submission and response. The process typically begins with "informal resolution" (although prisoners are not required to attempt informal resolution if the grievance relates to sexual abuse, 28 C.F.R. § 115.52(b)(3)), and then moves through a first request and two appeals. Generally speaking, the time for response to a first level review is 20 days—alone, far too long to be useful in the circumstances here. 28 C.F.R. § 542.14(a). And the aggregated times for response by BOP officials total an even less helpful 90 days. *See* 28 C.F.R. §§ 542.15, 542.18 (30 days for second level; 40 days for third level).

Given the incredibly abbreviated time frame here, even an emergency response to a grievance, had BOP decided to provide one, would still have been too slow. "[O]n the ground," *Ross*, 578 U.S. at 643, prisoners wait weeks or months to receive responses even to grievance requests relating to sexual assault. Analyzing comprehensive and publicly available BOP data about grievances, from 2020 to 2024, there were 172 grievances filed that BOP classified as relating to sexual abuse by other prisoners. In the entire multi-year period, **not a single one** was addressed on the merits (that is, granted or denied), at even a single level of review, in a week

or less—the time frame that would have been necessary here.[3]

In short, EO 14168's reversal of established BOP policies permitting high risk transgender women to be housed in women's prisons in appropriate cases— including BOP's own previous individual determinations involving Plaintiffs— exposed Plaintiffs to significant and unique harms and certainly presented an emergency situation well beyond the capacity of the grievance system to address timely before the harm materialized. Congress in the PLRA has not required prisoners to incur life-threatening abuse or sexual violation while they go through the motions of trying to pursue an unavailable remedy.

---

[3] The data are posted and described at https://www.data-liberation-project.org/datasets/federal-inmate-complaints/ and https://github.com/data-liberation-project/bop-inmate-complaint-data-processing/. The code that produced the analysis described in text is posted at https://www.law.umich.edu/facultyhome/margoschlanger/Pages/Resources.aspx.

## CONCLUSION

For these reasons, the district court's holdings with respect to jurisdiction and exhaustion should be affirmed.

Dated: July 7, 2025

Respectfully Submitted,

/s/ Carolyn F. Corwin

Margo Schlanger
625 So. State Street
LR 910
Ann Arbor, MI 48109
(202) 277-2506
margo.schlanger@gmail.com

Carolyn F. Corwin
Alex Cohen
Katie Cohen
Catherine Wettach
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-6000
ccorwin@cov.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This *amicus* brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 3,715 words.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it was prepared using Word for Microsoft 365 in 14-point Times New Roman, a proportionally spaced typeface.

<u>/s/ Carolyn F. Corwin</u>
Carolyn F. Corwin

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on July 7, 2025, I caused this document to be electronically filed with the Clerk of Court using this Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

/s/ Carolyn F. Corwin
Carolyn F. Corwin

*Counsel for Amici Curiae*